[Crim. No. 1922. In Bank.—April 27, 1915.]

THE PEOPLE, Respondent, v. GLENN WITT, Appellant.

CRIMINAL LAW—MURDER COMMITTED IN PERPETRATION OF BURGLARY—KILLING DONE BY CO-PERPETRATOR OF FELONY—MURDER OF FIRST DEGREE.—Each of two persons engaged in the perpetration or attempt to perpetrate a burglary is a principal, and each is equally guilty in the eyes of the law of any act committed by either in the prosecution of the burglarious scheme. Consequently, under section 189 of the Penal Code, where a murder is committed in the perpetration or attempt to perpetrate such crime, the one who did not actually do the killing, is guilty of murder in the first degree.

ID.—MURDER NECESSARILY OF FIRST DEGREE.—In a case where such a murder is proved, no other verdict than that of guilty of murder of the first degree could properly be rendered.

ID.—SUFFICIENCY OF INDICTMENT FOR MURDER COMMITTED IN PERPETRATION OF BURGLARY.—An information for murder is sufficient if it follows the language of the statute defining the offense, whatever the circumstances of the particular case. Consequently, an information for a murder so committed need not specifically allege that it

was committed in the perpetration or attempt to perpetrate a burglary.

ID.—INSTRUCTION AS TO SINGLE DEGREE OF MURDER.—In such a prosecution, it is proper to instruct the jury that where the killing is done in the perpetration or attempt to perpetrate one of the felonies specified in section 189 of the Penal Code, the jury has no option but to find the killing to be murder in the first degree.

ID.—TEMPORARY RETIREMENT OF JUROR—OMISSION OF ADMONITION—ERROR WITHOUT PREJUDICE.—To permit a juror, during the examination of a witness, to retire to an ante-room for two or three minutes, unaccompanied by an officer and without the statutory admonition, where no proceedings were had during his absence, and his retirement was not objected to by the defendant, is not a forbidden separation of the jury, and even if erroneous, will not be presumed prejudicial and will not warrant a reversal of a judgment of conviction. Especially is this true in view of the provisions of section 4½ of article VI of the constitution.

ID.—SIGNING OF WARRANT FIXING DATE OF EXECUTION—PRESENCE OF DEFENDANT NOT NECESSARY.—Under the statute of this state, the fixing of the time for the execution of the judgment imposing the penalty of death is no part of the judgment. This is done in the warrant signed by the judge and attested by the clerk, after the judgment is given. The presence of the defendant at the time the warrant is signed by the judge is not contemplated or required.

ID.—DETERMINATION BY JURY AS TO NATURE OF PUNISHMENT—EVIDENCE TO BE CONSIDERED—CHARACTER AND HABITS OF DEFENDANT.—On a trial for murder, the determination of the jury, under the provisions of section 190 of the Penal Code, as to death or life imprisonment, is to be based solely on such evidence as is admissible on the issues made by the indictment or information and the plea of the defendant, and it is not error to refuse to permit evidence for their consideration in determining that matter which is not relevant or material, such as testimony in reference to the defendant's character and previous habits.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Frank R. Willis, Judge.

The facts are stated in the opinion of the court.

Clyde E. Cate, and Hocker, Morris & Austin, for Appellant.

U. S. Webb, Attorney-General, and Robert M. Clarke, Deputy Attorney-General, for Respondent.

ANGELLOTTI, C. J.—Appellant Glenn Witt and one Oxnam were jointly informed against for the crime of murder, alleged to have been committed December 22, 1914. They were tried separately, and appellant having been convicted of murder in the first degree, was, on January 21, 1915, adjudged to suffer death. This is an appeal from such judgment and from an order denying his motion for a new trial.

It is not claimed that appellant is not guilty of the offense of which he has been convicted. In view of the record, such a claim would be without warrant. According to his own admissions made shortly after his arrest, and his own testimony given on the trial, appellant and Oxnam burglariously entered the house of deceased, William M. Alexander, in Los Angeles, at about 2 o'clock on the morning of December 22, 1914, for the purpose of committing larceny therein. They obtained access to the house through a window on the ground floor, and having gone upstairs, went into the room occupied by deceased and his wife. The attention of Mrs. Alexander was attracted by some noise made by them and she awakened her husband. Upon the flashing on of the electric light by the latter, appellant and Oxnam were discovered. Even then the two men persisted in their efforts to take and carry away the valuables of deceased, Oxnam attempting to hold Alexander at bay with a revolver which he had brought with him, while appellant was searching for articles of value. In the struggle which ensued between Alexander and members of his family on the one hand, and appellant and Oxnam on the other, Oxnam shot and killed the deceased. The appellant himself did not have a pistol. Both men escaped from the house, but were shortly after apprehended in a room where they had taken refuge. They were identified beyond question as the two burglars, and the case is one where guilt is shown beyond question of a doubt, even without the admissions and testimony of appellant. But, as we have said, the testimony of appellant himself convicts him of murder in the first degree. Although he did not himself fire the fatal shot, he was at the time engaged with Oxnam in the perpetration or attempt to perpetrate the burglary; was a principal therein, and was equally guilty with Oxnam in the eyes of the law of any act committed by the latter in and about the prosecution of the burglarious scheme of himself and Oxnam. Our statute expressly provid-

ing that any murder "which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, or mayhem, is murder of the first degree," (Pen. Code, sec. 189), makes this a case where no other verdict than that of guilty of murder of the first degree could properly have been rendered. As said by this court in *People* v. *Milton,* 145 Cal. 169, [78 Pac. 549], the law in such cases as this has declared to the malefactor: "If in your perpetration of or attempt to perpetrate arson, rape, robbery, burglary, or mayhem, you shall take the life of a fellow being, intentionally or unintentionally, your crime is murder of the first degree. The killing may be willful, deliberate, and premeditated, or it may be absolutely accidental. In either case, you are equally guilty. The elements of willfulness, deliberation and premeditation are not indispensable to your crime. The murder, under section 187 of the Penal Code is established, in that the killing is unlawful, it having been perpetrated in the performance or attempt to perform one of these felonies, and the malice of the abandoned and malignant heart is shown from the very nature of the crime you are attempting to commit."

A review of the record shows that there was in the proceedings no error affecting any substantial right of the appellant. In the light of the admitted facts, the various points made by counsel for appellant appear trivial and inconsequential.

The information charged the defendants with the crime of murder, committed as follows: "That the said Glenn Witt and Charles E. T. Oxnam, on the 22nd day of December, 1914, at and in the county of Los Angeles, state of California, did willfully, unlawfully, feloniously and with malice aforethought, kill and murder one William M. Alexander, a human being," contrary to the form, force and effect of the statute, etc. Concededly, this describes the offense of murder in the language of our statute, and is in accord with a form approved over and over again by this court. It is claimed, however, that it does not sufficiently allege the kind of murder proved in this case, viz: one committed in the perpetration or attempt to perpetrate one of the felonies specified in section 189 of the Penal Code. Whatever may be the rule declared by some cases from other jurisdictions, it must be accepted as the settled law of this state that it is sufficient to charge

the offense of murder in the language of the statute defining it, whatever the circumstances of the particular case. As said in *People* v. *Soto,* 63 Cal. 165, "The information is in the language of the statute defining murder, which is: 'Murder is the unlawful killing of a human being with malice aforethought' (Pen. Code, sec. 187). Murder, thus defined, includes murder in the first degree and murder in the second degree. It has many times been decided by this court that it is sufficient to charge the offense committed in the language of the statute defining it. As the offense charged in this case includes both degrees of murder, the defendant could be legally convicted of either degree warranted by the evidence." Under our decisions there is no ground for distinction in this regard between the class of murder in the first degree here involved and any other class. *People* v. *Hyndmann,* 99 Cal. 1, [33 Pac. 782], does not decide otherwise. Our simplified system of pleading in criminal cases has been in use for many years, and we think it may safely be said that it has not been found that defendants have in fact been without sufficient notice of the nature of the charge against them to enable them to make such defense as they had. It is certain that in the case at bar no such claim could be made, in view of the fact that the facts proved against appellant were precisely those which he had admitted before the trial and to which he testified on the trial. Of course if it should appear in any case that a defendant was in fact surprised by the theory of the prosecution as developed on the trial, a trial court would undoubtedly grant him such time as was reasonably necessary to make his defense.

In view of what has already been said, it is clear that the trial court did not err in instructing the jury substantially that where the killing is done in the perpetration or attempt to perpetrate one of the felonies specified in section 189 of the Penal Code, the jury has no option but to find the killing to be murder in the first degree. We find no substantial error in any of the other instructions.

The record shows that during the examination of one of the witnesses a juror asked to be excused for a minute, and the court answered "Yes," whereupon the juror went "into the ante-room and returned in two or three minutes," whereupon the court directed the trial to proceed. Apparently, while no adjournment was taken, no proceedings were had during

the absence of the juror. It is admitted that when the juror was thus allowed to absent himself, no admonition was given to him or to the other jurors, and that no officer accompanied said juror. There is no pretense that any objection was made by defendant at the time. It is urged on these facts that the jury was allowed to separate during the trial of the case, and that such separation must be held to have been prejudicial to appellant. It is not claimed that the trial court had placed the jury in charge of an officer, and under our statute (Pen. Code, sec. 1121) the jury are permitted to separate at adjournments and recesses until the case is submitted to them for decision, unless the court, in its discretion, orders them kept together in charge of an officer during the progress of the trial. Of course a separation would be improper after the jury had been placed in charge of an officer or after submission of the cause to the jury, or at any time while evidence was actually being received, and the cases cited by appellant from this state are all cases of this character. There was no forbidden separation here. (See *People* v. *Coyne,* 116 Cal. 297, [48 Pac. 218].) The only possible error here was the failure of the court to admonish the jurors when one was allowed to retire for a moment, in the manner prescribed for each adjournment by section 1122 of the Penal Code, as to not talking about the case or allowing any one else to talk to them about it, etc. Under the circumstances, no one probably thought of the necessity of such an admonition for this brief retirement of one of the jurors into another room. If error was committed here, it must be said of it, as was said in *People* v. *Coyne,* 116 Cal. 297, [48 Pac. 218], of the failure of the court to so admonish the jury upon an adjournment, that the error is technical and not of the importance to demand a reversal of the judgment and a new trial. Especially is this true in view of the provisions of section 4½ of article VI of the constitution. It would be most unreasonable to assume that any prejudice was suffered by appellant by reason thereof.

Appellant was personally present when judgment of death was pronounced on January 21, 1915, the judgment decreeing substantially that he suffer the penalty of death, that he be delivered into the custody of the warden of the state prison at Folsom, and that the sentence be executed by said warden on a date to be thereafter fixed by the court. Subsequently,

the judge, as required by section 1217 of the Penal Code, signed a warrant, appointing a day on which the judgment was to be executed, and directing the sheriff to deliver the defendant to the warden of the state prison for execution. Appellant was not present at the time the judge so appointed the day for execution. It is now claimed that appellant was entitled to be present when the day of execution was fixed. Under our statute, the fixing of the time for the execution of the judgment is no part of the judgment. That is to be done in the warrant signed by the judge and attested by the clerk, after the judgment is given. The judgment here was complete and valid without any appointment of such time, and, of course, could not be reversed for the reasons urged, even if appellant's contention that he was entitled to be present at the fixing of the time be well based. But we think there is no force in the contention. It has been substantially held that under our statutes his presence at the signing and attesting of the warrant is not contemplated or required (*People* v. *Flannelly*, 128 Cal. 94, [60 Pac. 670]), and we see no reason to doubt the correctness of this view. The question here is probably, however, of no practical importance, for the reason that the time fixed has passed without the execution of the judgment by reason of this appeal. An order for the execution of the judgment at a specified time must be made by the court under section 1227 of the Penal Code, before it can now be executed, and by express provision of that section, appellant is entitled to be present at the time of the making of any such order. (See *People* v. *Chew Lan Ong,* 141 Cal. 553, [99 Am. St. Rep. 88, 75 Pac. 186].)

Finally it is urged that the trial court erred in refusing to permit testimony to be given by appellant and his mother with reference to his character and previous habits. It is not claimed that the offered testimony was relevant or material on the issue of either guilt or degree of crime, but simply that inasmuch as the jury had the right to assess the punishment in the event of conviction at either death or life imprisonment, appellant was entitled to have admitted for their consideration evidence as to matters not otherwise relevant or material. We are of the opinion that our law does not contemplate any such independent inquiry on a trial for murder, and that the determination of the jury, under the provisions of section 190 of the Penal Code, as to death or

life imprisonment, is necessarily to be based solely on such evidence as is admissible on the issues made by the indictment or information and the plea of the defendant. But if we assume otherwise, we are nevertheless satisfied from an examination of the record that it cannot be held that defendant was denied the opportunity by any ruling of the trial court of showing any extenuating fact or circumstance that could have properly affected the verdict. So far as he himself was concerned, he fully testified as to his condition the evening of the homicide, said that he had no place to sleep, was "broke," out of work, had no supper that evening. His answers to the remaining two or three questions to which objections were sustained could not have added to the effect of this. The only other witness on this branch was appellant's mother, who testified as to her age, that of the appellant, her own occupation. Objections were sustained to questions asking her how long has it been since appellant resided with her and his father, whether the father was still living, what occupation appellant has followed during the last year, what his education had been, when she herself came to Los Angeles. No statement was made as to the object of these questions, or what it was expected to show thereby. We cannot perceive that they had any legitimate bearing on any question to be determined by the jury, and can see no reason to assume that answers to the same could have affected the verdict in any way.

The judgment and order denying a new trial are affirmed.

Sloss, J., Melvin, J., Shaw, J., Lorigan, J., Henshaw, J., and Lawlor, J., concurred.